**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 17-78-DLB**

**JOE WARNER**                                                              **PLAINTIFF**


**vs.**                          **MEMORANDUM OPINION AND ORDER**


**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                          **DEFENDANT**

* * * * * * * * * * * * *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 3, 2013, Plaintiff Joe Warner filed an application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging disability beginning on February 25, 2013. (Tr. 194-198, 199-206).  Specifically, Plaintiff alleged that he was limited in his ability to work due to: (1) a bulging disc in his neck, bone spurs, and numbness in his arms; (2) shoulder pain; and (3) rheumatoid arthritis.  (Tr. 228).

Plaintiff's claim was denied initially and on reconsideration.  (Tr. 97-106, 107-119). At Plaintiff's request, an administrative hearing was conducted on May 11, 2015, before Administrative Law Judge ("ALJ") Bonnie Kittinger.  (Tr. 51-86).  On December 4, 2015,

ALJ Kittinger ruled that Plaintiff was not entitled to benefits. (Tr. 10-37). This decision became the final decision of the Commissioner when the Appeals Council denied review on December 29, 2016. (Tr. 1-8).

On February 22, 2017, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 10 and 12).

## II.    DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date, February 25, 2013, through his date last insured. (Tr. 15). At Step Two, the ALJ determined that Plaintiff had two severe impairments: degenerative disc disease and inflammatory/rheumatoid arthritis. (Tr. 15). The ALJ also determined that Plaintiff had the following non-severe, minimally limiting, impairments: hypertension; a sleep-related breathing disorder; obesity; and periodic upper extremity numbness and pain. (Tr. 15). At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 17). Specifically, the ALJ considered Listing 1.04A and found that the evidence does not show that the Plaintiff "has experienced a spinal disorder resulting in a compromise of a nerve root or the spinal cord, with nerve root compression, spinal arachnoiditis, or spinal stenosis with accompanying ineffective ambulation." (Tr. 17). The ALJ also

considered Listing 14.09 and found that the evidence presented in support of allegations of inflammatory/rheumatoid arthritis did not show any of the listed symptoms.  (Tr. 17).

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the exertional and non-exertional limitations as follows:

> [T]he claimant can lift and carry twenty pounds occasionally, and ten pounds frequently.  He can stand/walk six hours, and sit at least six hours, out of an eight-hour workday, and sit a total of six hours in an eight-hour workday.  He occasionally can climb ramps and stairs, stoop, kneel, crouch, and crawl.  He should not climb ladders, ropes, or scaffolds.  He should avoid concentrated exposure to vibration, and to hazards such as dangerous machinery and unprotected heights.

(Tr. 17).  Based upon the RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work.  (Tr. 28).  Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 29).  The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of decision.  (Tr. 30).

### C.    Plaintiff's Arguments

Plaintiff advances two arguments on appeal: (1) that the ALJ erred in finding that Plaintiff did not meet or equal the qualifications the disability in Listing 1.04A; and (2) that the ALJ failed to assign controlling weight to the treating-source physician's medical opinion.  (Doc. # 10-1 at 2).  Each of these arguments will be addressed in turn.

#### 1.    *The ALJ did not err in finding that the Plaintiff did not meet or equal Listing 1.04A.*

The burden to prove a disabling impairment at Step Three lies with the claimant. *Arnold v. Comm'r of Soc. Sec.*, 238 F.3d 419, at *2 (6th Cir. 2000) (table) (citing *Burgess*

*v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). At this Step, the ALJ must consider the medical severity of the claimant's impairments and determine whether the impairment meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 414.1520(a)(4)(iii), 416.920(a)(4)(iii). Appendix 1 "describes for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.*; 20 C.F.R. § 1525(a). The Listings in Appendix 1 specify "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 1525(c)(3). All of these criteria must be satisfied, in addition to the Security Administration's duration standard, which requires impairments that are not expected to result in death to have lasted, or be expected to last, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1525(c)(3) and 404.1509. If an impairment meets the duration standard and satisfies all the medical criteria in Appendix 1, the claimant is "deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. Appx. 411, 414 (6th Cir. 2011).

At Step Three, the ALJ identified 1.04 (disorders of the spine) and 14.09 (inflammatory arthritis) as possible Listings that Plaintiff's impairments might meet. (Tr. 17). Plaintiff has only argued error for the ALJ's interpretation of Listing 1.04—in particular Listing 1.04A—and so the Court will focus on that Listing.

To meet an impairment under Listing 1.04A, a claimant must show a disorder of the spine, such as degenerative disc disease or spinal stenosis, which results in a compromise of a nerve root of the spinal cord. This showing must be accompanied by "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of

pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Appendix 1 at 1.04A.

The ALJ considered the medical evidence presented to her and determined that it did not show that Plaintiff "has experienced a spinal disorder resulting in the compromise of a nerve root or the spinal cord, with nerve root compression, spinal arachnoiditis, or spinal stenosis with accompanying ineffective ambulation." (Tr. 17). The record supports the ALJ's determination.

Plaintiff reported that his impairment began in February 2013, but by July 25, 2013, his physical therapy notes indicate that he "Woke up feeling great, first time in about 6 months … 'No pain and ready to go.'" (Tr. 413). Plaintiff reported pain at 0/10. *Id.* In August 2013, per physical therapy notes, he was noted as having said "I feel really good today, love feeling a little sore from working out at home." (Tr. 410). On October 18, 2013, Plaintiff visited Doctor Knetsche, whose notes indicate that Plaintiff stated that the pain he felt in his neck, shoulders, and arms "does not cause weakness." (Tr. 341). Five months later, Doctor Enlow noted that Plaintiff appeared to have neck and shoulder muscle spasms, with numbness in his left arm and part of his right hand, with his muscle strength still 5/5. (Tr. 452-453). In October 2014, Doctor Enlow again determined that Plaintiff's muscle strength was 5/5 and that his assessment/plan was simply to refill Plaintiff's medication for his neck pain. (Tr. 494-496). Doctor Enlow scheduled Plaintiff for an MRI on January 22, 2015, with the reason for exam listed as "Neck Pain/Ruptured Disc." (Tr. 611). Two months after surgery (Tr. 645-647), Plaintiff reported no

improvement of his symptoms, which included "continued neck pain and arm pain with associated weakness." (Tr. 625). But two months after that, in September 2015, Plaintiff's "neck pain is localized to the left lateral and right lateral cervical region," and he denied muscular weakness as a neurologic symptom. (Tr. 648-651).

Substantial evidence supports the ALJ's determination that Plaintiff did not meet his burden of showing his impairment met or equaled all of the criteria in Listing 1.04A, enduring a minimum of twelve months.

**2.** ***The ALJ did not err in weighing the opinion of Doctor Enlow, a treating source.***

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source is one that has not examined the claimant but has provided medical or other opinion evidence in the case. *Id.*

Generally, the ALJ must give "controlling weight" to the opinions of treating sources, so long as that source's opinion on the "nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

If the ALJ does not give the claimant's treating physician controlling weight for the reasons above, the ALJ must still consider the treating source's opinion and determine how much weight to give it, by considering a number of factors. 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must consider the length, frequency, nature, and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; the physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ evaluates the opinions of non-treating sources by considering these same factors. *See id.*

Plaintiff's Motion for Summary Judgment (Doc. # 10) assigns as error the weight the ALJ gave to the medical opinion of Doctor Enlow. (Doc. # 10-1 at 10-13). Plaintiff argues that the ALJ failed to give good reasons "for rejecting contradicted medical opinion from a treating source." *Id.* at 10. As a result, Plaintiff argues that the ALJ's reasoning for rejecting Doctor Enlow's medical opinion is not supported by substantial evidence. *Id.*

In considering whether a treating-source opinion must be given controlling weight, the Sixth Circuit has stated that the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Gayheart 710 F.3d at 376 (citing 20 C.F.R. § 404.1257(c)(2)).* In addition, the opinion must not be "inconsistent with the other substantial evidence in [the] case record." *Id.* The two-prong test as laid out in subsection (c)(2), and enunciated in *Gayheart*, requires both prongs to be met for a treating-source opinion to be given controlling weight. If Doctor Enlow's opinions fail to satisfy either prong, controlling weight need not be given to those opinions.

In determining the Plaintiff's RFC, the ALJ analyzed the record, including medical and testimonial evidence. (Tr. 18-28). The ALJ considered Plaintiff's testimony at the

hearing on this matter, the written testimony of his wife, the objective radiographic findings, and the treatment and surgery notes from Doctors Enlow, Knetsche, Wheeler, Shahzad, Dillen, and Shamsulddin, in addition to the notes of Ashley Guiliani and Dee A. Abrams, both nurse-practitioners. *Id.* The ALJ also considered the August 2014 opinion of treating physician Doctor Enlow; the treatment notes of neurosurgeon Doctor Wheeler, the X-Ray and MRI records taken from March 2013 through the date of hearing, in addition to the state agency's medical and psychological consultants. *Id.* at 20-28.

The focus of Plaintiff's argument is Doctor Enlow's August 4, 2014 Residual Functional Capacity Questionnaire. (Tr. 483-490). Plaintiff argues that Doctor Enlow's answers to the Questionnaire show "multiple disabling opinions, based on his treatment relationship with Warner and the objective medical records." (Doc. 10-1 at 11). But when asked to "note the objective, clinical, or other specific findings that support [his] diagnosis and opinion," Doctor Enlow answered with one word: "Yes." (Tr. 483). This is hardly an exhaustive list of objective medical records supporting Doctor Enlow's diagnosis and opinion. In his report, the ALJ considered Doctor Enlow's August 4, 2014 assessment in detail, noting that Doctor Enlow's opinion indicated Plaintiff "needed to be able to walk frequently, and to shift positions at will," but that "[Plaintiff] could sit, stand and/or walk for four hours at a time, for a total of least six hours each during an eight-hour workday." (Tr. 22).

The ALJ explained that she gave Doctor Enlow's opinion partial weight, insofar as he "assessed the claimant with the abilities to sit, stand, and walk at least six hours each during an eight hour workday," but found that Doctor Enlow's assessment of other "ongoing functional limitations" were "not well supported by [his] ongoing objective

treatment notes and findings, or by the objective medical evidence as a whole. (Tr. 27). Despite Doctor Enlow's opinion that Plaintiff's impairments had lasted or were expected to last twelve months (Tr. 486), Plaintiff expressed a desire to return to work just a few months before (Tr. 469-70, 481-82), and was encouraged to follow through just four months after. (Tr. 517-18). Although Plaintiff underwent surgery in May 2015, by August of that year, his treating neurosurgeon indicated that Plaintiff had "essentially normal upper and lower extremity strength." (Tr. 27). Thus, substantial evidence, detailed by good reasons in accordance with 20 C.F.R. § 404.1527(c), supports the ALJ's determination that Doctor Enlow's opinion did not merit controlling weight.

In the end, Plaintiff is asking this Court to find that the ALJ misinterpreted the evidence or emphasized certain aspects of the medical record in favor of others. However, this is equivalent to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by substantial evidence. *See Roberts v. Astrue*, No. 1:09-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). As stated earlier, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d at 781-82. Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

## III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

(3)     Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED;** and

(4)     A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 13th day of December, 2017.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\17-78 Warner  MOO.docx